## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

**SURGRET URANIA DOSS**
     Plaintiff,

**vs.**                    **CASE NO: 8:22-cv-00144-SDM-TGW**
                                   **JURY TRIAL DEMANDED**

**WILLIAM FOSTER**, In his Offical Capacity,
**JOHN DOE DEPUTIES I-V**, In their Offical Capacities,
**HILLSBOROUGH COUNTY**, a political subdivision of Florida,
**CHAD CHRONISTER**, In His Official Capacity
as Sheriff of Hillsborough County,
     Defendants

## PLAINTIFF'S SECOND AMENDED COMPLAINT

**COMES NOW**, Surgret Urania Doss ("Plaintiff") and sues William Foster ("Foster"), In His Offical Capacity, Hillsborough County (the "County"), A Political Subdivision of Florida, Currently Unknown John Doe Deputies I-V ("JD Deps"), In Their Offical Capacities as Sworn Law Enforcers and Employees of the Hillsborough County Sheriff's Office, and Chad Chronister ("Sheriff Chronister"), In his Offical Capacity as Sheriff of Hillsborough County Florida, and alleges as follows:

Plaintiff is a *Pro Se* Litigant and prays this Court applies liberal construing of his complaint *Fitzpatrick v. Bank of N.Y. Mellon*, <u>580 F. App'x 690, 4</u> (11th Cir. 2014):

## <u>INTRODUCTION</u>

This civil rights action stemmed from an incident during the afternoon Traffic Court Docket on January 16, 2018. Plaintiff accompanied his friend, Patterson, to a hearing in the Hillsborough County traffic court located at 419 N Pierce St, in Tampa, Florida as a member of the public. While inside The County Traffic Court, Foster shouted, "Get his phone!" The Bailiffs stopped Plaintiff as he headed towards the exits, and instead of telling him why they stopped him, they demanded he gives them his valuable cell phone. When Plaintiff refused to part with his property, JD Deps prevented him from leaving and confined him to The County Traffic courtroom for more than an hour without expressing or relaying any articulable facts or circumstances warranting detaining him.

Plaintiff brings federal constitutional claims against Defendant, The County, as the supervisory entity responsible for training and supervising their employees and failing to properly train its Hearing Officers concerning protocols regarding the constitutional rights of citizens,

2

including people of color and even African-American Men. The County had a  policy and custom that constituted deliberate indifference to Plaintiff's rights, thereby allowing the deprivation of his rights under the constitution and laws of the State of Florida and ultimately resulting in his unlawful detention, absent probable cause or reasonable suspicion that he committed a crime or was about to commit a crime. The County's lack of adequate training and supervision promoted the atmosphere that contributed to its employee Foster's reckless conduct.

Additionally, Plaintiff brings constitutional and state claims against Sheriff Chronister as the supervisory entity responsible for the conduct, training, and supervision of Hillsborough County Sheriff's Office ("HCSO") employees under his charge, including all personnel assigned to The County courtrooms. Sheriff Chronister failed to properly train the JD Deps I-V in the appropriate methods, procedures, and protocols regarding the constitutional rights of citizens who attend a public hearing, including people of color and even African-American Men. Instead, sheriff Chronister promoted a  policy and custom that constituted deliberate indifference to Plaintiff's rights, thereby allowing the deprivation of his rights under the constitution and laws of the State of Florida and ultimately resulting in his

3

unlawful detention, absent probable cause or reasonable suspicion that he committed a crime or was about to commit a crime.

## JURISDICTION AND VENUE

1. Plaintiff seeks relief under the Fourth and Fourteenth Amendments of the United States Constitution, 42 USC §1983, The Civil Rights Acts of 1871 and 1964, for general and punitive damages; and, if applicable later, attorney fees pursuant to 42 USC §1988.

2. Court has jurisdiction over this matter pursuant to 28 USC §1331, as this action arises under federal law.

3. This Court has jurisdiction pursuant to 28 USC §1343 because the issues affect Plaintiff's federal Civil Rights.

4. This Court has jurisdiction pursuant to 28 USC §1391 because the incidents leading to this action occurred within this District.

5. Personal jurisdiction and venue are proper because the facts giving rise to these claims took place in this District, and each Defendant's principal areas of business and residences are in this District.

## THE PARTIES

6. Surgret Urainia Doss, (The) Plaintiff, is a 54 years-old African American Man and an honorably discharged Veteran who was a resident of Hillsborough County, Florida, and a citizen of the United

4

States at all material times to this action. Plaintiff is well-known in the 13th Judicial Circuit ("13th") as a self-representing litigant.

7.   At all times material, Defendant Foster was a traffic court Hearing Officer ("H.O.") and employed by Defendant The County. Therefore, H.O. Foster operated under color of state law and the direction and control of The County when he participated in the unconstitutional violations and other wrongful acts that occurred during the afternoon traffic court docket on January 16, 2017. Additionally, based upon belief, H.O. Foster was a Florida resident at all times material to this action. Accordingly, Plaintiff sues Foster in his Offical Capacity and as an Individual.

8.   JD Deps I-V are currently unknown and fictitiously named defendants. However, Plaintiff believes the discovery will avail their names and roles in his unreasonable and unlawful detention. Accordingly, Plaintiff sues JD Deps I-V in their Offical Capacities and as Individuals.

9.   At all times material, Defendant Sheriff Chronister was the Sheriff of Hillsborough County, Florida. Sheriff Chronister was the constitutional officer responsible for HCSO employees and policies.

5

Accordingly, Plaintiff sues Sheriff Chronister in his official capacity as the ultimate policy enforcer for Defendant County. Accordingly, Plaintiff sues Sheriff Chronister in his official capacity as the principal policy enforcer and the entity responsible for implementing and enforcing the policies regulating The County operations.

10.   At all times material, Defendant County is an entity, corporate and political, duly organized under the laws of Florida. Defendant County is the government entity responsible for the actions of its officials, agents, and employees and accountable for their training, supervision, and conduct as a matter of law. Defendant County is supposed to ensure its employees obey the Constitution and State of Florida laws. Plaintiff sues Defendant County in its supervisory capacity and under the doctrine of Respondent Superior.

## FACTUAL ALLEGATIONS
### All events occurred on January 16, 2018

11.   Before accompanying his friend to his court hearing, Plaintiff spent the morning of January 16, 2018, defending against a meritless perjury allegation.

6

12.   Patterson saw Plaintiff after the morning hearing, informed him of a hearing regarding a traffic matter, and asked him to accompany him, to which He agreed.

13.   H.O. Foster was the traffic court hearing officer assigned by Defendant County for the afternoon docket and presided over Patterson's hearing.

14.   Several others also attended the afternoon docket, and not all had traffic hearings; some, like Plaintiff, accompanied people with traffic hearings.

15.   Plaintiff sat quietly in the courtroom while the others, including his friend Patterson, conducted their business.

16.   Plaintiff did not make noise, interrupt the proceedings, and was not involved in any criminal conduct.

17.   After others completed their business with Foster, they left the room without being asked to give away their cell phones, and none of Defendant Sheriff Chronister's employees confined anyone else to the County traffic courtroom.

18.   At no time did Plaintiff do anything threatening to anyone in the room while observing the hearings.

19. Plaintiff never disrupted H.O. Foster's ability to carry out his duties and never engaged anyone in the courtroom other than Patterson while inside the hearing.

20. Patterson was one of the last people Foster called, and as he concluded his business, Plaintiff rose from his seat and headed toward the aisle leading to the exit.

21. Suddenly, and without justification or reason, Foster maliciously yelled, "GET HIS PHONE!" when Plaintiff got up to leave the room.

22. Before the interaction during the afternoon docket on January 16, 2018, Plaintiff never interacted with H.O. Foster for traffic court.

23. H.O. Foster never requested anyone else's cell phone, nor did he react to anyone else in the gallery as they came and left the hearing, and none of the JD Deps stopped anyone else from exiting the courtroom freely.

24. Plaintiff looked around but continued towards the courtroom exits. However, as Plaintiff got closer to the door, a Bailiff, JD Dep I-V, stopped him before he left the hearing room and demanded his cell phone.

25.   The right-side aisle to the exit is not overly wide, so Plaintiff stopped because he did not want a physical confrontation or to give the responding bailiffs provocation to attack him.

26.   Because of the aggressive posture Sheriff Chronister's JD Dep took when responding to H.O. Foster's directions and the events surrounding the recently dismissed perjury action, Plaintiff feared for his safety.

27.   When asked to give up his property, specifically his cell phone, Plaintiff refused and asked JD Dep for a search warrant and the legal reason for asking for the cell phone.

28.   The JD Dep I-V Bailiff, a sworn County Deputy and an employee of Sheriff Chronister, never explained ***why*** he wanted the phone, nor did he provide a search warrant.

29.   However, when Plaintiff refused to give away his valuable property, JD Dep I-V held him inside the courtroom for over an hour while others came and left without incident.

30.   When the JD Dep I-V failed to provide a warrant or legal reason for demanding the phone, Plaintiff asked if he were free to leave, and the response was, "No, you are being detained."

9

31.   Shortly after his unlawful detention, other JD Deps I-V entered the courtroom in force and caused Plaintiff concern.

32.   Plaintiff had a verbal exchange with one of the JD Deps, and it surprised him when one of the JD Deps I-V asked, "Why isn't he in jail?"

33.   For over an hour, Sheriff Chronister's employees prevented Plaintiff from leaving the building without a specific reason for detaining him or demanding his cell phone.

34.   Despite the unreasonableness and unlawful detention, Plaintiff did not capitulate to the unlawful, unwarranted, and unreasonable demands for his property.

35.   Eventually, after confining Plaintiff for over an hour, the JD Deps I-V allowed him to leave the courtroom.

36.   Interestingly, none of the JD Deps I-V employees gave Plaintiff an articulable reason for asking for his cell phone or violating his right to be free from unlawful and unreasonable detention.

37.    Immediately after ordering the Bailiffs to demand Plaintiff's phone unconstitutionally, H.O. Foster left the courtroom without

confronting him or explaining why he felt Plaintiff's detainment and the demand for his property acceptable behavior.

38. Plaintiff seeks damages for violations of his federal rights, specifically his right not to have his property unlawfully seized without a search warrant and absent probable cause.

39. Plaintiff seeks damages for his federal rights violations, specifically his Fourth Amendment right to be free from seizure without probable cause.

40. Additionally, Plaintiff seeks damages for violations of his Fourteenth Amendment right not to be detained, especially when Foster and the JD Deps I-V knew he was entitled to release.

## **COUNT ONE**
### **42 U.S.C. § 1983 – 4th Amendment Violation Claim for False Imprisonment Against Defendant William Foster**

41. Plaintiff realleges the allegations contained in Paragraphs 1-35 as if fully set forth herein.

42. As stated more fully above, Foster operated within the course and scope of his employment with Defendant County when he caused Plaintiff's False Imprisonment.

43. Through his own volition, Foster participated, under color of law, when he intentionally instructed JD Deps I-V to unlawfully and unreasonably detain Plaintiff and take his personal property.

44. Foster was the proximate cause of Plaintiff's unlawful detention despite knowing he did nothing unusual or threatening.

45. Fully aware that nothing criminal occurred or was going to occur, Foster gave instructions that created an uncomfortable and potentially dangerous interaction with the JD Deps I-V.

46. Furthermore, Foster knew Plaintiff had not broken any laws or disrupted the Court's business.

47. Therefore, when Foster directed JD Deps to "get his (Plaintiff's) phone," his subsequent seizure was without probable cause or lawful authority.

48. As a result of the conduct described above, Foster directly and proximately caused Plaintiff to lose his liberty without probable cause.

49. Foster's intentional, knowing, and malicious actions caused Plaintiff's unreasonable, unlawful, and extended seizure within a confined area, thereby violating his civil rights.

50. In as much as Foster knew or should have known that Plaintiff attended the hearing and maintained a non-disruptive and non-threatening posture, Foster's actions and the instructions to JD Deps constitute false imprisonment of Plaintiff without lawful authority.

51. Additionally, As a result of the conduct described above, Foster directly and proximately caused Plaintiff to spend unnecessary time confined to the hearing room, despite knowing he had a right to leave, violating his civil rights.

**WHEREFORE**, **AS TO COUNT ONE**, Plaintiff prays this Court grants the following relief under **42 U.S.C. § 1983 for a 4ᵗʰ Amendment Violation of False Imprisonment Against Defendant Foster**;

   a. Judgment(s) for compensatory damages above $100,000.00;

   b. Judgment for punitive damages up to the maximum allowed under the law;

   c. Cost of suit;

   d. Declaratory Judgements as this Court deems just and appropriate;

   e. All other relief as this Honorable Court deems appropriate,

   f. Trial by jury as to all issues so triable.

## COUNT TWO

### 42 U.S.C. § 1983 – 4th Amendment Violation Claim
### for False Imprisonment Against JD Deps I-V

52. Plaintiff realleges the allegations contained in Paragraphs 1-35 as if fully set forth herein.

53. As stated more fully above, JD Deps I-V knowingly, willfully, and collectively operated within the course and scope of their employment under the supervision of Sheriff Chronister when functioning as County courthouse Bailiffs and security when they caused Plaintiff's False Imprisonment.

54. Despite knowing Plaintiff never broke any laws, JD Deps I-V choose, on each of their own volition, to actively participate in violating Plaintiff's right not to be unreasonably searched and seized.

55. As sworn deputies, the JD Deps I-V were obliged to conduct themselves according to well-established law and not violate the Plaintiff's constitutional rights even, especially when given an unlawful instruction by Defendant Foster.

56. Furthermore, JD Deps I-V knew or should have known that confining Plaintiff to the County traffic courtroom without probable cause was unreasonable, unwarranted, and without authority.

57.   Defendants, JD Deps I-V, knowingly and willfully violated Plaintiff's Fourth Amendment freedoms from being subjected to an unreasonable and unlawful search and seizure of his person and his property.

58.   These same JD Deps I-V knowingly, willfully, and collectively violated Plaintiff's Fourteenth Amendment right to attend and leave a public hearing without being confined, inside the County traffic courtroom, against his will, after they knew or should have known he never committed a crime, and without reasonably articulable justification.

**WHEREFORE, AS TO COUNT TWO**, Plaintiff prays this Court grants the following relief under **42 U.S.C. § 1983 for a 4th Amendment Violation of False Imprisonment Against JD Deps I-V;**

a.   Judgment(s) for compensatory damages above $100,000.00;

b.   Judgment for punitive damages up to the maximum allowed under the law;

c.   Cost of suit;

d.   Declaratory Judgements as this Court deems just and appropriate;

e.   All other relief as this Honorable Court deems appropriate,

f.   Trial by jury as to all issues so triable.

**COUNT THREE**

**42 U.S.C. §1983 Claim against Defendant Sheriff Chronister
For Supervisor Liability**

59.   Defendant Sheriff Chronister's failure to train JD Deps I-V to follow
      the laws of the United States and Florida violated Plaintiff's
      constitutional right not to be unreasonably and unlawfully searched
      and seized under the Fourth Amendment.

60.   Furthermore, Sheriff Chronister violated Plaintiff's Fourteenth
      Amendment right to attend, watch, and then leave a public hearing
      without being confined to the County traffic court, against his will,
      and without reasonably articulable justification.

61.   Thus, Sheriff Chronister assumes liability for the actions, inactions,
      commissions, and ommissions of the unknown JD Deps I-V, who
      refused to follow well-established law and failed to intervene on the
      Plaintiff's behalf when Foster instructed them to violate Plaintiff's
      Fourth Amendment protections and take his personal property.

62.   Sheriff Chronister, as the primary rule maker and policy enforcer, is
      responsible for implementing official policies and regulations for
      employees under his supervision, namely the JD Deps I-V.

16

63. Also, Sheriff Chronister is responsible for regulating those policies and implementing training for employees under his charge, including teaching them how to interact with citizens legally.

64. As the final policy enforcer for Hillsborough County, Sheriff Chronister owed Plaintiff a duty to ensure the employees under his charge received adequate training on their responsibility not to follow the unlawful instructions of non-judicial officers like H.O. Foster.

65. Sheriff Chronister and the JD Deps did nothing to remediate the ongoing unlawful conduct and unlawful activity proximately caused when Foster instructed them to deny Plaintiff of the equal protection of the law as prescribed by the Fourteenth Amendment.

66. Sheriff Chronister's policies allowed the JD Deps remained indifferent to its responsibility to prepare its employees to interact with citizens, like Plaintiff, an Army Veteran, exercising their constitutional rights.

67. Sheriff Chronister's substandard supervisory protocols and practices led to Foster and the JD Dep's unconstitutional acts against Plaintiff.

68. Sheriff Chronister's defective protocols and practices that led to the acts that Foster and JD Deps perpetrated against Plaintiff are the

culmination of policies and customs of failing to ensure employees are abreast of important information regarding interactions with the public.

69. As a result of Sheriff Chronister's faulty supervisory traditions and practices, Plaintiff suffered inconvenience, emotional discomfort, loss of time, humiliation, and emotional trauma that continues to this day.

70. As a direct result of the conduct described above, Plaintiff lost the freedom to be free from unlawful and unauthorized seizure, violating his civil rights.

71. Further, as a direct and proximate result of the actions mentioned above, Plaintiff's unlawful and unwarranted detention by employees of Sheriff Chronister created an emotionally traumatizing event and violated Plaintiff's civil rights.

**WHEREFORE, AS TO COUNT THREE**, Plaintiff prays this Court grants the following relief under **42 U.S.C. §1983 Claim against Defendant Sheriff Chronister For Supervisor Liability:**

a. Judgment(s) for compensatory damages above $100,000.00;

b. Judgment for punitive damages up to the maximum allowed under the law;

18

c.    Cost of suit;

d.    Declaratory Judgements as this Court deems just and appropriate;

e.    All other relief as this Honorable Court deems appropriate,

f.    Trial by jury as to all issues so triable.

## COUNT THREE

### 42 U.S.C. §1983 Claim against Defendant Sheriff Chronister For Supervisor Liability

72.    Defendant Sheriff Chronister's failure to train JD Deps I-V to follow the laws of the United States and Florida violated Plaintiff's constitutional right not to be unreasonably and unlawfully searched and seized under the Fourth Amendment.

73.    Furthermore, Sheriff Chronister violated Plaintiff's Fourteenth Amendment right to attend, watch, and then leave a public hearing without being confined to the County traffic court, against his will, and without reasonably articulable justification.

74.    Thus, Sheriff Chronister assumes liability for the actions, inactions, commissions, and ommissions of the unknown JD Deps I-V, who refused to follow well-established law and failed to intervene on the Plaintiff's behalf when Foster instructed them to violate Plaintiff's Fourth Amendment protections and take his personal property.

19

75. Sheriff Chronister, as the primary rule maker and policy enforcer, is responsible for implementing official policies and regulations for employees under his supervision, namely the JD Deps I-V.

76. Also, Sheriff Chronister is responsible for regulating those policies and implementing training for employees under his charge, including teaching them how to interact with citizens legally.

77. As the final policy enforcer for Hillsborough County, Sheriff Chronister owed Plaintiff a duty to ensure the employees under his charge received adequate training on their responsibility not to follow the unlawful instructions of non-judicial officers like H.O. Foster.

78. Sheriff Chronister and the JD Deps did nothing to remediate the ongoing unlawful conduct and unlawful activity proximately caused when Foster instructed them to deny Plaintiff of the equal protection of the law as prescribed by the Fourteenth Amendment.

79. Sheriff Chronister's policies allowed the JD Deps remained indifferent to its responsibility to prepare its employees to interact with citizens, like Plaintiff, an Army Veteran, exercising their constitutional rights.

20

80. Sheriff Chronister's substandard supervisory protocols and practices led to Foster and the JD Dep's unconstitutional acts against Plaintiff.

81. Sheriff Chronister's defective protocols and practices that led to the acts that Foster and JD Deps perpetrated against Plaintiff are the culmination of policies and customs of failing to ensure employees are abreast of important information regarding public interactions.

82. As a result of Sheriff Chronister's faulty supervisory traditions and practices, Plaintiff suffered inconvenience, emotional discomfort, loss of time, humiliation, and emotional trauma that continues to this day.

83. As a direct result of the conduct described above, Plaintiff lost the freedom to be free from unlawful and unauthorized seizure, violating his civil rights.

84. Further, as a direct and proximate result of the actions mentioned above, Plaintiff's unlawful and unwarranted detention by employees of Sheriff Chronister created an emotionally traumatizing event and violated Plaintiff's civil rights.

**WHEREFORE, AS TO COUNT THREE**, Plaintiff prays this Court grants the following relief under **42 U.S.C. §1983 Claim against Defendant Sheriff Chronister For Supervisor Liability:**

a.  Judgment(s) for compensatory damages above $100,000.00;

b.  Judgment for punitive damages up to the maximum allowed under the law;

c.  Cost of suit;

d.  Declaratory Judgements as this Court deems just and appropriate;

e.  All other relief as this Honorable Court deems appropriate,

f.  Trial by jury as to all issues so triable.

## **COUNT FOUR**

### **42 U.S.C. §1983 Claim against Defendant The County For Supervisor Liability**

80.  Defendant County's failure to train H.O. Foster to follow the United States and Florida laws violated Plaintiff's constitutional rights as protected by the Fourth Amendment.

81.  Furthermore, The County violated Plaintiff's Fourteenth Amendment right to attend, watch, and then leave a public hearing without being confined to the County traffic court, against his will, and without reasonably articulable justification by its employee, H.O. Foster.

82.  Because H.O. Foster is an employee of The County, it assumes liability for the actions, inactions, commissions, and ommissions of Foster, who acted in an official capacity, and refused to follow well-

established law by instructing the JD Deps to violate Plaintiff's Fourth Amendment protections.

83. The County's policies promulgated the atmosphere that allowed H.O. Foster's indifference to the rights of the Plaintiff, an Army Veteran, to exercise his constitutional rights.

84. The County's substandard supervisory protocols and defective practices that led to the acts that Foster perpetrated against Plaintiff are the culmination of policies and customs of failing to ensure employees know how to interact with the public appropriately.

85. As a result of The County's faulty supervisory traditions and practices, Plaintiff suffered inconvenience, emotional discomfort, loss of time, humiliation, and emotional trauma that continues to this day.

86. As a direct result of the conduct described above, Plaintiff lost the freedom to be free from unlawful and unauthorized seizure, violating his civil rights.

87. Furthermore, as a direct and proximate result of the actions mentioned above, Plaintiff's unlawful and unwarranted detention caused by H.O. Foster created an emotionally traumatizing event and violated Plaintiff's civil rights.

23

**WHEREFORE, AS TO COUNT FOUR**, Plaintiff prays this Court grants the following relief under **42 U.S.C. §1983 Claim against Defendant The County For Supervisor Liability:**

a. Judgment(s) for compensatory damages above $100,000.00;

b. Judgment for punitive damages up to the maximum allowed under the law;

c. Cost of suit;

d. Declaratory Judgements as this Court deems just and appropriate;

e. All other relief as this Honorable Court deems appropriate,

f. Trial by jury as to all issues so triable.

## Demand for a Jury Trial

Plaintiff Surgret Urania Doss demands a Trial by Jury according to Federal Rule of Civil Procedure 38(b) on all triable issues.

Respectfully Submitted on this 28th Day of October 2022

s/Surgret Urania Doss
Surgret Urania Doss
3612 North 55th Street
Tampa, Florida 33619
surgretdoss@gmail.com
813-570-9617

24

## **CERTIFICATE OF SERVICE**

I CERTIFY that on October 28, 2022, I electronically filed the foregoing motion with the Clerk of the Court using the CM/ECF system.

Respectfully Submitted,

s/Surgret Urania Doss
Surgret Urania Doss